James Buford LeVan v. Commissioner.
James Buford LeVan v. Commissioner
Docket No. 17978.
United States Tax Court
1951 Tax Ct. Memo LEXIS 8; 10 T.C.M. (CCH) 1219; T.C.M. (RIA) 51355; December 26, 1951
*8 1. During the taxable years involved, petitioner and his wife in good faith intended to and did actually join together in the conduct of a partnership business under the name of Cherokee Motor Coach Co. 2. Petitioner has failed to establish that the rates of depreciation which the respondent allowed in 1942 on certain equipment acquired in that year were not proper and ample. Fred M. Williams, Jr., Esq., Chattanooga Bank Bldg., Chattanooga, Tenn., and Harold A. Kertz, Esq., for the petitioner. Percy C. Young, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in income tax for the calendar years 1941, 1943 and 1944, in the respective amounts of $6,335.62, $107,955.10 and $25,356.74. Due to the forgiveness feature of the Current Tax Payment Act of 1943, the year 1942 is also involved. The issues are: 1. Whether, during the taxable periods involved, petitioner and his wife, Florence LeVan, in good faith intended to and actually joined together as partners in the conduct of a partnership business under the name of Cherokee Motor Coach Co. 2. Whether the respondent erred in determining *9 that the amount claimed in 1942 as a deduction for depreciation on certain equipment was excessive to the extent of $37,468.03. Findings of Fact Petitioner is an individual residing in Chattanooga, Tennessee. His returns for the taxable years involved were filed on a cash basis with the collector of internal revenue for the district of Tennessee. Petitioner was married in 1922. At that time he was employed as a mechanic. In 1925 he joined with his brother in operating a repair garage. In 1927 petitioner and his brother acquired a one-third stock interest in a bus corporation known as Cherokee Motor Coach Co., Inc., and several years later became the sole owners of the capital stock of that corporation. In 1938 petitioner acquired all the outstanding capital stock, consisting of 160 shares. For several years prior to 1938, petitioner and his wife, Florence LeVan, were having marital troubles, and petitioner's wife had filed a petition for a divorce. In 1936, during their marital troubles, petitioner transferred title to their home, which then stood in their joint names, to his wife. In the Spring of 1938 the financial position of Cherokee Motor Coach Co., Inc. was such that *10 it could not secure money with which to purchase license tags for its motor vehicles. Petitioner persuaded his wife that the corporation could not continue to operate unless it acquired the license tags, and she agreed to and did secure a loan of $2,500 by placing a mortgage on the home. Florence LeVan agreed to secure the mortgage loan only on the conditions that she would be given an interest in the business and put in complete charge of the corporation's books and finances. Petitioner accepted the conditions his wife imposed. Florence LeVan secured the loan of $2,500, which was placed in the corporation's account. Florence LeVan became secretary and a director of the corporation, operated the office, and had complete charge of the books and finances. In September 1938 she advanced an additional $500 and in June 1939 she advanced $1,500 more, both of which sums were put into the corporation's bank account and used in the business. After Florence LeVan took charge of the office she devoted 8 or 10 hours per day to the affairs of the corporation. She was not repaid any of the amounts advanced and received no salary. Early in 1941 petitioner was advised by his attorney-accountant *11 that it would be beneficial to dissolve the corporation and conduct the business as a sole proprietorship. Petitioner advised his attorney-accountant that the business could not be operated as a sole propietorship because his wife had an interest. The attorney-accountant advised that it would be better to operate as a partnership. Although petitioner's wife had repeatedly requested that she be given evidence of her interest in the corporation, no stock certificates were issued to her. Petitioner kept advising her that there was no need to hurry since she had charge of all the corporation's finances. The original certificates which petitioner held were misplaced and could not be located. In order to show petitioner's wife's interest in the corporation, the attorney-accountant endorsed on a stub in the stock certificates book the following: "50 shares donated to Florence LeVan, certificate lost, all stock cancelled 4-30-41." Later the attorney-accountant prepared a Federal gift tax return which petitioner executed and filed, setting forth the transfer to Florence LeVan of 50 shares of stock of Cherokee Motor Coach Co., Inc., valued at $4,891.40, with the following explanation: *12 "I wanted my wife to have an interest in the Cherokee Motor Coach Company, as she has devoted much of her time and attention to the business." All the assets of the corporation were transferred to the partnership, which assumed all corporate liabilities, and the corporation was dissolved April 30, 1941. On the same day petitioner and his wife executed an agreement of partnership. The agreement evidences the contribution of each partner, as follows: J. B. LeVan
110 shares of the capital stock
of Cherokee Motor Coach
Co., Inc., to be liquidated at
an agreed value of $10,761.08.
Florence LeVan
50 shares of the capital stock
of Cherokee Motor Coach
Co., Inc., to be liquidated at
an agreed value of $4,891.40.
The partnership agreement, inter alia, contains the following provisions: "ARTICLE V "The compensation of J. B. LeVan by reason of his personal services shall be as follows: He shall be permitted to withdraw each month the sum of $1,000.00, which amount shall be first deducted from the profits of the partnership and shall be, as between the partners, an expense of the partnership, and shall be deducted before the profits of the partnership *13 are determined. After such amount has been deducted from the income of the partnership, the remaining profit shall constitute the net profit of the partnership. After such net profits have been so determined, the profits and losses shall be divided as follows: J. B. LeVan
68,75%
Florence LeVan
31.25%
* * *
"ARTICLE VII "DISSOLUTION "At any time, by mutual consent of the partners, this partnership may be dissolved. "It is understood and agreed, however, that in the event J. B. LeVan becomes dissatisfied with this partnership or agreement and desires to dissolve it, he may do so upon payment to Florence LeVan the value of her interest as shown by the books of the partnership, or the sum of $10,000.00, whichever amount is the smaller. In such event, J. B. LeVan agrees to assume and pay all partnership debts and to hold said Florence LeVan free and harmless from liability to creditors of this partnership. * * *
"ARTICLES [ARTICLE] VIII "ADMINISTRATIVE PROVISIONS "The business of the partnership shall be conducted and managed exclusively by J. B. LeVan and said partner is hereby given full power and authority to do any act, make any contract *14 or agreement in the name of the partnership in connection with its business and affairs as he may deem proper. He shall have the exclusive right to employ and discharge any and all persons, drivers, mechanics, clerks, stenographers, or any other employee at his discretion. "It is understood that Florence LeVan will take and have no part in the management of the partnership and that she will not make any contracts or agreements binding the partnership to any extent." * * *
With the formation of the partnership in 1941, capital accounts were set up on the books evidencing each partner's interest. Each account was periodically credited with the respective share of earnings and charged with the withdrawals. Petitioner did not control the funds of his wife. She maintained with the Hamilton National Bank of Chattanooga both a checking and a savings account over which petitioner had no jurisdiction or control. The only joint bank account was opened on January 21, 1943 and closed May 29, 1945. On January 21, 1943 petitioner and his wife each withdrew $15,000 from the partnership and opened the joint account for the purpose of purchasing a farm. During the taxable years involved, *15 the business was held out to the public as a partnership at all times. It reported as a partnership to banks and creditors and in the reports made to all Federal and state regulatory boards and commissions. Each of the regulatory commissions, state and Federal, approved the transfer of the franchises and certificates from the corporation to petitioner and his wife as partners. The partnership maintained bank accounts in Huntsville, Alabama, and in Tullahoma, Sherryville, Oak Ridge and Rockwood, Tennessee. After the formation of the partnership, Florence LeVan worked 6 days a week, averaging between 55 and 65 hours per week. She had charge of all the partnership records, its receipts and disbursements, drew checks on the partnership bank accounts, secured bank loans and prepared or supervised the preparation of payrolls. She supervised all office and maintenance employees, hired and discharged employees, handled all employees' and passenger's complaints and the dispatching of buses. She inaugurated and developed new service routes, and represented the company in its dealings with Federal and state regulatory bodies in matters relating to certificates of convenience and necessity, *16 tariff schedules, insurance and all phases of motor carrier regulations. She participated in management and policy decisions. Through her business ability and constant supervision of the affairs of the business and finances, Florence LeVan, the wife of the petitioner, during the relevant years, largely contributed to the success of the business. These services were important, substantial and vital not only to the partnership but to the corporation during the relevant period. Petitioner devoted his attention to the procurement, operation and maintenance of the equipment, which required him to be away from the business for two or three days a week. During such absences Florence LeVan was in complete charge of the operations of the business. During the taxable years involved, partnership returns were filed setting forth the names of the partners and the amount of their distributive shares. Petitioner and his wife filed individual returns in the taxable years involved in which each reported the distributive shares received from the partnership. In determining the deficiencies in controversy, the respondent taxed to petitioner the entire net income of the Cherokee Motor Coach Co. for *17 the taxable years involved. In the calendar years 1941 to 1944, inclusive, petitioner and his wife, Florence LeVan, in good faith intended to and did actually join together as partners in the conduct of a partnership business under the name of Cherokee Motor Coach Co. On the partnership return for 1942 depreciation was claimed in the total amount of $84,469.42. With respect to 23 pieces of motor equipment, 2 pieces of which were acquired in December, 2 in November, 1 in October, 8 in September, 3 in August, and 7 between February and July 1942, depreciation was claimed on a useful life of 2 years. Depreciation was claimed on other motor equipment on the basis of a useful life of 5 years. The respondent in determining his deficiency used a five-year basis with respect to the 20 pieces and a four-year basis with respect to the 3 pieces acquired in 1942, disallowing $37,468.03 of the total amount of depreciation claimed. Petitioner has failed to establish that the amount of depreciation allowed by the respondent was not ample for the year 1942. Opinion The first issue presents the question whether petitioner and his wife in good faith intended to and did actually join together *18 as partners in the conduct of business under the name of Cherokee Motor Coach Co., in the taxable years involved. The bona fides and realities for tax purposes of a family arrangement to conduct a business as a partnership present a question of fact. The validity of a partnership is to be sustained if, upon a consideration of all the facts, it is found that the parties in good faith intended to and did join together through the taxable years in conducting the business as partners. . Sometime prior to 1938 petitioner and his brother acquired all the outstanding capital stock of the Cherokee Motor Coach Co., Inc., a common carrier of passengers for hire. In 1938 petitioner acquired the interest of his brother and became the sole owner of such corporation. Prior to 1936 petitioner and his wife were having marital troubles and she had instituted a divorce proceeding. In 1936 petitioner conveyed to his wife title to their home, which he had originally purchased and which then stood in their joint names. In 1938 the Cherokee Motor Coach Co., Inc. was in financial straits and was unable to procure sufficient funds with which to purchase *19 the license plates requisite to continuing the operation of its motor vehicles. Petitioner requested his wife to borrow the sum of $2,500 by placing a mortgage on her home. She refused to borrow the money unless she be given an interest in the business and be put in charge of the office and given complete charge of the company's books and finances. Petitioner agreed to such arrangement and his wife borrowed the money, which was put in the corporation's bank account. Petitioner's wife was made a director and secretary of the corporation. In 1938 and 1939 she advanced additional amounts totaling $2,000. This money was also put in the corporation's bank account and used in the business. During the years 1938, 1939 and 1940 Florence LeVan put in full time, averaging 55 to 65 hours per week, supervising the office work and handling all the corporation's finances, for which she drew no salary. In 1941 petitioner's attorney-accountant advised him that considerable tax benefit would result if petitioner dissolved the corporation and operated the business as a sole proprietorship. Petitioner advised his attorney-accountant that he could not operate the business as a sole proprietorship, *20 since his wife had an interest in it, and it was thereupon decided to form a partnership between petitioner and his wife. Although Florence LeVan had repeatedly demanded evidence of her ownership of an interest in the corporation, no stock certificates were issued to her, petitioner always saying to her that since she was handling all of the finances she was secure and there was no need for hurry. During the conferences relative to the formation of the partnership it developed that petitioner was unable to locate his stock certificates, and he left to his attorney-accountant the manner of evidencing Florence LeVan's interest in the corporation. The attorney-accountant made an entry on a stub in the stock certificate book to the effect that 50 shares had been donated to Florence LeVan, and also prepared a gift tax return which petitioner executed and filed, evidencing the gift of 50 shares of the stock of Cherokee Motor Coach Co., Inc., having a value of $4,891.40. Petitioner testified, however, that the transfer of the interest to his wife was made in pursuance of the oral agreement he made with her at the time she agreed to obtain the original mortgage loan which was advanced *21 to the corporation, and because of her subsequent advances of further funds. We think the record convincingly establishes that the advances of funds which petitioner's wife made and the services she had performed for the corporation furnished a consideration in excess of the value of the shares transferred. The attorney who was handling Florence LeVan's divorce proceeding, which was pending during the period involved, testified that he had personal knowledge that she had obtained certain loans and had advanced the proceeds to the corporation. The record shows that she was not reimbursed by the corporation in any amount. On April 30, 1941 petitioner and his wife executed a formal partnership agreement. The agreement recites that petitioner's contribution to the partnership was $10,761.08 and Florence LeVan's $4,891.40, which is approximately the amount the record shows she had advanced the corporation. The assets of the corporation were transferred to the partnership, which assumed all the corporate liabilities, and the corporation was dissolved. We think there can be little doubt of the reality of Florence LeVan's contribution to the partnership. Furthermore, the record convincingly *22 establishes that she rendered important, substantial and vital services not only to the corporation during the period 1938 to April 1941, but to the partnership during the taxable years involved. Through her business ability and her constant supervision of the company's affairs and finances she contributed in a large measure to the success of the business. Such fact is supported by the credible testimony of several disinterested witnesses. It is unnecessary to review in detail the volume and character of the services which Florence LeVan rendered. The respondent, on brief, states that he "without equivocation of any kind, distinctly recognizes and concedes that the services Mrs. LeVan contributed from 1938 to 1944 were important, valuable, and substantial." He points, however, to two provisions of the agreement which he argues evidence the lack of any intention to conduct a bona fide partnership. One such provision provides, in substance, that the business of the partnership shall be conducted and managed exclusively by petitioner; and another provision permits petitioner to dissolve the partnership at any time upon the payment to Florence LeVan of a sum not in excess of $10,000 and *23 the assumption of all partnership liabilities. In connection with the first provisions, relative to control of the business, it certainly does not contradict the existence of a partnership that one of the partners was the "managing" partner, under the agreement. That is quite ordinary in a partnership. However, the fact is here, and has been so found, that Florence LeVan, to a large degree, supervised, managed and conducted the business. With respect to the provision permitting petitioner to purchase his wife's interest upon the payment of $10,000 and the assumption of all liabilities, it is to be noted that the partnership was one at will and could be dissolved at any time by either partner. The fact that Florence LeVan was willing to accept a stipulated amount in the event petitioner decided to dissolve the partnership does not, we think, warrant the inference that the parties did not in good faith intend to conduct the business as bona fide partners. Petitioner's wife testified that she was not satisfied with the interest she was permitted to have in the partnership business, since it was her understanding, at the time she made the mortgage loan to enable the corporation to *24 continue, that her interest would be one half. She further testified that she was not satisfied with the provision requiring her to accept $10,000 for her interest in the event of dissolution of the partnership, but accepted the agreement as the best she could obtain, and that it was important to her to have formal recognition of her interest in the business. Moreover, in the light of the strained marital relationship existing between the parties over a period of years, it seems to us even more likely that the agreement was not a mere device for splitting income, but was one entered into at arm's length, and so carried out. The agreement provides for the sharing of profits and losses, and the record clearly shows that Florence LeVan was credited with and at all times controlled her share of the earnings and profits of the partnership. This record is convincing that Florence LeVan contributed her own capital and rendered vital services to the partnership, and we have therefore found as a fact that petitioner and his wife in good faith intended to and did actually join together as partners in the conduct of a partnership business under the name of Cherokee Motor Coach Co. We hold, *25 therefore, that the respondent erred in taxing Florence LeVan's share of the earnings of the partnership in the taxable years involved to petitioner. The remaining issue involves the amount of depreciation to which the partnership is entitled in the year 1942, with respect to 23 pieces of equipment acquired during that year. On the 1942 partnership return, depreciation was claimed on 23 pieces of motor equipment on the basis of a useful life of two years. The respondent allowed depreciation on 20 pieces of equipment on the basis of a useful life of five years, and as to three pieces he used a four-year rate, resulting in a disallowance of $37,468.03 of the total amount of depreciation claimed with respect to such equipment. The proper amount of depreciation presents a question of fact, and the burden is upon petitioner to establish the facts to support his position. , reversed on another point, ; . The record establishes that between the months of February and the end of December 1942, the partnership acquired 23 pieces of motor *26 equipment. Depreciation on these 23 pieces was claimed on a useful life of 2 years. With respect to 20 pieces, the respondent allowed depreciation on the basis of 5 years, and on the other 3 pieces he used a four-year basis, thus disallowing $37,468.03 of the total depreciation claimed. Since the record establishes that a large number of the 23 pieces of motor equipment in question were acquired during the last six months of 1942, we think petitioner has not shown that the 50 per cent rate claimed was reasonable. Furthermore, the 1944 partnership return shows that depreciation was still being claimed on the same equipment in 1944, indicating the equipment was then in useful operation. In view of the facts disclosed by the record, we are of the opinion that petitioner has failed to establish that the rates of depreciation allowed by the respondent were not proper and ample for the year 1942. On this issue the respondent's determination is sustained. Decision will be entered under Rule 50.